1  CHAD A. READLER
   Acting Assistant Attorney General
2  Civil Division
   ETHAN P. DAVIS
3  Deputy Assistant Attorney General
   JOSHUA I. WILKENFELD
4  Acting Director, Consumer Protection Branch
   GABRIEL H. SCANNAPIECO
5  gabriel.h.scannapieco@usdoj.gov
   United States Department of Justice
6  Consumer Protection Branch, Civil Division
   P.O. Box 386
7  Washington, DC  20044
   Telephone (202) 532-4665
8  Facsimile (202) 514-8742
9
10 *Attorneys for United States*
11
12                UNITED STATES DISTRICT COURT
13              NORTHERN DISTRICT OF CALIFORNIA
                      SAN JOSE DIVISION
14
15

| | |
|---|---|
| 16  UNITED STATES OF AMERICA, | Case No.: 5:17-cv-5269 |
| 17              Plaintiff, | **COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** |
| 18        v. | |
| 19  CUSTOMPAX, INC., a corporation, and | |
| 20  CEDRIC P. LING, an individual, | |
| 21              Defendant. | |

22

23        Plaintiff, the UNITED STATES OF AMERICA, by and through the undersigned

24  attorneys, respectfully alleges as follows:

25        1.        This statutory injunction proceeding is brought under the Federal Food, Drug, and

26  Cosmetic Act (the "Act"), 21 U.S.C. § 332(a), to enjoin and restrain Custompax, Inc.

27  ("Custompax" or the "firm"), a corporation, and Cedric P. Ling, an individual (collectively,

28  "Defendants"), from violating:

COMPLAINT                                    1                    Case No. 5:17-cv-5269

1    A.    21 U.S.C. § 331(a), by introducing or delivering, or causing to be

2  introduced or delivered, into interstate commerce articles of food (dietary supplements) that are

3  adulterated within the meaning of 21 U.S.C. § 342(g)(1); and

4    B.    21 U.S.C. § 331(k), by causing articles of food (dietary supplements) to

5  become adulterated within the meaning of 21 U.S.C. § 342(g)(1), while such articles are held for

6  sale after shipment of one or more of their components in interstate commerce.

7                              **JURISDICTION AND VENUE**

8    2.    This Court has jurisdiction under 21 U.S.C. § 332(a) and 28 U.S.C. §§ 1331, 1337,

9  and 1345, and personal jurisdiction over all parties.

10   3.    Venue in this district is proper under 28 U.S.C. § 1391(b) and (c).

11                                        **PARTIES**

12   4.    Plaintiff is the United States of America.

13   5.    Defendant Custompax is incorporated in the state of California and is located at

14  40963 Encyclopedia Circle, Fremont, CA, 94538.  The firm manufactures and distributes dietary

15  supplements.  The firm has been in operation since 2005.  The firm currently has 26 employees.

16  Custompax also has an office in Beijing, China.

17   6.    Defendant Cedric P. Ling is the Chief Executive Officer, Secretary, Chief

18  Financial Officer, and an owner of Custompax.  He has ultimate authority over the firm's

19  operations, including business strategy, final decisions on any problems with production, and

20  product sales and distribution.  Custompax's Quality Control and Quality Assurance Manager

21  reports directly to him.  During the most recent FDA inspection, which occurred from May 17-27,

22  2016, Mr. Ling was identified as the most responsible person at the firm.

23                          **INTRADISTRICT ASSIGNMENT**

24   7.    The conduct at issue took place in large part in Alameda County, California.

25                      **DEFENDANT'S MANUFACTURING PROCESS**

26   8.    Custompax bills itself as "the world's leader in the mass customization of dietary

27  supplements, enabling "anyone" to create "his or her own custom-designed supplement

28  formula[.]" (*See* http://www.custompax.com/about.html.)  All of Defendants' products consist of

COMPLAINT                                2                    Case No. 5:17-cv-5269

1  custom-made, non-repeat powder formulas, packed in empty capsules of plant origin.

2      9.      Defendants do not sell their products directly to consumers.  Instead, they sell their

3  dietary supplements to two customers who have their own websites by which physicians and

4  healthcare providers can place orders for Custompax's products.  The two customers are

5  Compounded Nutrients, located at 3002 Dow Avenue, Suite 512, Tustin, CA, 92870; and

6  Shenzen Catic Wellness Co., located in Shenzhen, China.

7      10.     Through these customers, individual consumers can create and order their own

8  unique dietary supplements by selecting the type and quantity of ingredients they want the firm to

9  manufacture into capsules.  Customers can also customize the labels on the bottles and/or give

10  their custom supplements unique names.

11      11.     Defendants manufacture approximately 40 batches of custom dietary supplements

12  each week using bulk powdered ingredients obtained from third-party vendors.  Every batch

13  contains a unique mix of customer-selected powdered ingredients and requires its own master

14  manufacturing record (MMR).

15  **DEFENDANTS DISTRIBUTE ADULTERATED DIETARY SUPPLEMENTS**

16      12.     The Act prohibits doing or causing "the introduction or delivery for introduction

17  into interstate commerce . . . any food [including any dietary supplement] that is adulterated."

18  21 U.S.C. §§ 331(a), 321(ff).

19      13.     It is also a violation of the Act to do or cause to be done an act that results in a

20  dietary supplement being adulterated while it is held for sale after shipment of one or more of its

21  components in interstate commerce.  21 U.S.C. §§ 331(k), 321(ff).

22      14.     The Act defines "dietary supplement" as "a product (other than tobacco) intended

23  to supplement the diet that bears or contains one or more of the following dietary ingredients:  a

24  vitamin; a mineral; an herb or other botanical; an amino acid; a dietary substance for use by man

25  to supplement the diet by increasing the total dietary intake; or a concentrate, metabolite,

26  constituent, extract or combination of [any of them]."  21 U.S.C. § 321(ff).  In addition, a dietary

27  supplement must not be "represented for use as a conventional food or as a sole item of a meal or

28  the diet" and must be "labeled as a dietary supplement."  *Id.*

COMPLAINT                                    3                      Case No. 5:17-cv-5269

1       15.     Many of Defendants' products fall within the Act's definition of a dietary

2 supplement in that they contain at least one of the dietary ingredients specified in 21 U.S.C.

3 § 321(ff) and are labeled as dietary supplements on their principal display panels as defined in 21

4 C.F.R. § 101.1.

5       16.     The Act requires manufacturers of dietary supplements to operate in compliance

6 with current good manufacturing practice regulations for dietary supplements set forth at 21

7 C.F.R. Part 111 ("Dietary Supplement CGMP").  21 U.S.C. § 342(g)(1).  Manufacturing

8 according to Dietary Supplement CGMP means that the manufacturing process incorporates a set

9 of controls in the design and production processes to ensure a quality finished product.  Dietary

10 supplements not manufactured, prepared, packed, or held in conformance with Dietary

11 Supplement CGMP are deemed to be adulterated.  21 U.S.C. § 342(g)(1).

12       17.     An FDA investigator most recently inspected Defendants' facility on May 17-27,

13 2016 (the "May 2016 inspection").  The May 2016 inspection revealed significant deviations

14 from Dietary Supplement CGMP, including, but not limited to, the following:

15       A.     Defendants fail to adequately establish identity specifications for each

16 component used in the manufacture of finished dietary supplements, in violation of 21 C.F.R.

17 § 111.70(b)(1).  Defendants lack scientific evidence to show that the test methods that they use

18 are able to verify dietary ingredients' identities;

19       B.     Defendants fail to establish component specifications to ensure the finished

20 product meets specifications for purity, strength, and composition, in violation of 21 C.F.R.

21 § 111.70(b)(2).  Defendants did not establish adequate specifications for the purity, strength and

22 composition of multiple dietary ingredients used in the manufacturing of their finished dietary

23 supplements;

24       C.     Defendants fail to establish product specifications for the identity, purity,

25 strength, composition of the finished batch of dietary supplement, in violation of 21 C.F.R.

26 § 111.70(e).  For example, Defendants did not understand that strength and composition were not

27 the same specification.  In addition, Defendants believed that they could determine finished

28 product purity by determining the collective percentage of all intended components, rather than

COMPLAINT                                   4                            Case No. 5:17-cv-5269

1  establishing a purity specification for the finished product;

2          D.       Defendants fail to conduct appropriate tests or examinations to determine

3  compliance with specifications for identity, purity, strength, and composition, in violation of 21 C.F.R.

4  § 111.75(c)(2).  For example, Defendants verify purity and composition specifications by calculation of

5  inputs as opposed to chemical analysis;

6          E.       Defendants fail to include all the required elements of a Master

7  Manufacturing Record (MMR), in violation of 21 C.F.R. § 111.210.  For example, for several of

8  Defendants' products, the MMRs include procedures that do not describe adequate testing

9  methods to determine if purity, strength, and composition specifications have been met, in

10  violation of 21 C.F.R. § 111.210(h)(2), or do not include specific corrective action plans to use

11  when a specification is not met, in violation of 21 C.F.R. § 111.210(h)(5); and

12          F.       Defendants fail to conduct an appropriate review of product complaints to

13  determine whether the complaint involved a failure of the dietary supplement to meet

14  specifications, in violation of 21 C.F.R. § 111.560.  Specifically, when reviewing a product

15  complaint, Defendants did not perform a review of the specifications and testing results prior to

16  release and distribution of the specific products, or a review of any other products manufactured

17  around the same time as this batch.  Defendants only conducted a retest of the returned sample for

18  microbial content; they did not test any other product specifications to determine if they were the

19  cause of the complaint.

20                    **DEFENDANTS ENGAGE IN INTERSTATE COMMERCE**

21          18.      During the most recent inspection, Custompax employees stated that Custompax

22  distributes approximately 50% of its finished product into interstate commerce via FedEx or the

23  United States Postal Service and exports at least 3-10% of its finished product.

24          19.      The FDA investigator collected records during the May 2016 inspection that

25  documented Defendants receiving raw ingredients from an out-of-state supplier in New Jersey.

26                                    **PRIOR NOTICE**

27          20.      Defendants have been told that their conduct violates the law, and that continued

28  violations could lead to regulatory action, having received five FDA Forms 483, Lists of

COMPLAINT                                    5                          Case No. 5:17-cv-5269

1    Inspectional Observations ("Form FDA 483") between 2011 and May 2016 and an FDA Warning

2    Letter in March 2012.

3      21. An FDA inspector issued the most recent Form FDA 483 to Defendants at the

4    close of a comprehensive, six-day inspection of the firm in May 2016.  The FDA inspector

5    discussed the observed deviations with the firm's Vice President of Operations, who stated that he

6    would provide a copy of the Form FDA 483 and relate the discussion of each observation to Mr.

7    Ling.

8      22. In addition, FDA conducted an inspection of the firm in August 2015, issuing a

9    Form FDA 483 containing several of the same or similar violations from the most recent

10   inspection, including:  the failure to adequately establish identity specifications for each

11   component used in the manufacture of finished dietary supplements; the failure to establish

12   product specifications for the identity, purity, strength, composition of the finished batch of

13   dietary supplement; the failure to verify that finished product met established specifications;

14   failure to have instructions in the MMR for corrective action plans to use when specifications are

15   not met; and the failure to conduct an appropriate investigation.

16     23. FDA also conducted an inspection in September 2014 and found many of the same

17   violations that remained in 2015 and 2016, including:  the failure to verify that finished product

18   met established specifications; failure to ensure that meeting specific component and in-process

19   specifications ensures that finished product specifications are met; and the failure to have

20   instructions in the MMR for corrective action plans to use when specifications are not met.

21     24. FDA investigators documented the same or similar violations at inspections

22   conducted in October 2012 and September 2011.  At each of these inspections, FDA investigators

23   discussed the violations listed in the Forms FDA 483 with the individual Defendant.  Defendants

24   promised corrections at every inspection, but have yet to adequately establish and implement such

25   corrections.

26     25. Following the September 2011 inspection, FDA sent Defendants a Warning Letter

27   dated February 8, 2012.  The Warning Letter detailed the CGMP violations observed at the

28   inspection and warned Defendants that failure to correct these violations could result in

COMPLAINT       6      Case No. 5:17-cv-5269

1  enforcement action.  Defendants responded to the Warning Letter on March 7, 2012, and

2  promised corrections to the violations; FDA observed the same or similar violations at all

3  following inspections.

4       26.    Defendants made additional promises to correct their CGMP violations at a

5  regulatory meeting with the San Francisco District Office on May 7, 2013, and in their most

6  recent responses to the May 2016 Form FDA 483, dated July 11, 2016, and to the August 2015

7  inspection, dated September 21, 2015, and November 20, 2015.  These repeated promises to

8  correct have not, to date, yielded adequate corrective actions being implemented at Defendants'

9  facility.

10  **PRAYER**

11  **WHEREFORE**, Plaintiff respectfully requests that the Court:

12      I.    Enter a permanent injunction to prevent future violations of the FTC Act by

13  Defendant with respect to the privacy of consumers' personal information;

14          A.    Violating 21 U.S.C. § 331(a), by distributing adulterated dietary

15  supplements in interstate commerce; and

16          B.    Violating 21 U.S.C. § 331(k), by causing dietary supplements to become

17  adulterated, while such articles are held for sale after shipment of one or more of their

18  components in interstate commerce;

19      II.    Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each

20  and all of their directors, officers, agents, representatives, employees, attorneys, successors, and

21  assigns, and any and all persons in active concert or participation with any of them, from

22  manufacturing, processing, packing, labeling, holding, or distributing dietary supplements, unless

23  and until Defendants' methods, facilities, and controls used to manufacture, process, pack, label,

24  and hold dietary supplements are established, implemented, operated, administered, and recorded

25  in conformity with the Act and Dietary Supplement CGMP, 21 C.F.R. Part 111, in a manner that

26  has been found acceptable by FDA;

27      III.    Order that FDA be authorized pursuant to this injunction to inspect Defendants'

28  facility and all records relating to receiving, manufacturing, processing, packing, labeling,

1   holding, and distributing any drug or dietary supplement to ensure continuing compliance with

2   the terms of the injunction, the costs of such inspections to be borne by Defendants at the rates

3   prevailing at the time the inspections are accomplished; and

4          IV.     That Plaintiff be granted judgment for its costs herein, and that this Court grant

5   such other and further relief as it deems just and proper.

6   ///

7   ///

8   ///

9   ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Dated:   September 12, 2017

Respectfully submitted,

**FOR THE FOOD AND DRUG
ADMINISTRATION:**

**FOR PLAINTIFF
THE UNITED STATES OF AMERICA:**

JEFFREY DAVIS
Acting General Counsel

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

REBECCA K. WOOD
Chief Counsel
Food and Drug Division

ETHAN P. DAVIS
Deputy Assistant Attorney General

ANNAMARIE KEMPIC
Deputy Chief Counsel for Litigation

JOSHUA I. WILKENFELD
Acting Director
Consumer Protection Branch

TARA BOLAND
Associate Chief Counsel for
Enforcement
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993-0002

/s/ *Gabriel H Scannapieco*                 .
GABRIEL H. SCANNAPIECO
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC  20044
(202) 532-4665
gabriel.h.scannapieco@usdoj.gov

COMPLAINT

9

Case No. 5:17-cv-5269